UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FELIX MORET,                                          :

                     Petitioner,                  :          10 Civ. 06652 (KPF) (DF)

    -against-                                        :          **REPORT AND**
                                             **RECOMMENDATION**
PHILIP D. HEATH,                                      :

                     Respondent.              :
----------------------------------------------------------------X

**TO THE HONORABLE KATHERINE POLK FAILLA, U.S.D.J.:**

      In 2010, *pro se* petitioner Felix Moret ("Petitioner") filed a petition in this Court under

28 U.S.C. § 2254 for a writ of habeas corpus, challenging his state conviction of first-degree

manslaughter on two grounds:  first, that the trial court's "who-speaks-the-truth" jury charge

allegedly violated his constitutional rights against self-incrimination and to due process, and,

second, that he was denied due process by the trial court's alleged error in denying his request to

charge second-degree manslaughter, as a lesser-included offense to intentional murder.

      After filing his petition, though, Petitioner informed the Court that he wished to withdraw

it, in order to exhaust certain additional claims in the state courts.  When this Court cautioned

him that, because of the one-year statute of limitations governing habeas claims, there could be

adverse consequences to withdrawing his petition, Petitioner instead requested that this Court

stay these proceedings and hold them in abeyance, pending the state-court resolution of his

additional claims.  Upon receiving that altered request, this Court directed Petitioner to provide

more information to the Court, so that it could determine whether a stay was justified.  Petitioner

never responded to that directive.  Nor, to date, has he made any efforts to keep the Court

apprised of the status of his efforts to exhaust his additional claims.  Nor has he ever filed any

papers in reply to Respondent's opposition to the two claims pleaded in the petition.

As the Court has now heard nothing further from Petitioner for a substantial period of

time, and as it is clear from the face of the record that Petitioner can neither justify a stay of

these proceedings nor prevail on the two claims that he has actually asserted here, I recommend

that his application for a stay be denied, that the petition be dismissed, and that this matter be

closed on the Docket of the Court.

## BACKGROUND

### A.      Factual Background

A lengthy recitation of the evidence in the record of Petitioner's trial is not necessary for

this Court to be able to resolve his habeas claims.  In short, the prosecution presented evidence at

trial that, on June 26, 2003, in the Bronx, three witnesses, including two police detectives and

one lay witness, saw Petitioner shoot a man named Bernard Henley ("Henley") four times, at

close range.  (*See* Transcript of jury trial, dated Apr. 6-8, 2005, and Apr. 11-14, 2005

(collectively, "Tr."), at 89, 92-94, 101, 143, 163-65, 179, 187-88.)  Henley was taken to a

hospital and pronounced dead, having sustained three gunshot wounds.  (*Id.*, at 26-27, 72, 168,

236-51.)  Petitioner ran from the scene of the shooting, but was pursued by police and eventually

stopped and placed under arrest.  (*Id.*, at 64, 67-68, 92-95, 166-68, 187-95, 207-09.)  Although

witnesses had observed Petitioner with a gun in his hand (*id.*, at 93-94, 163-65, 179), he did not

have a gun in his possession at the time of his arrest (*id.*, at 95, 190-91, 208-09).  Police,

however, recovered a gun from under a car, near the place of Petitioner's arrest (*id.*, at 35-36,

68-69, 95, 191-96), and ballistics evidence confirmed that it was the gun that had been used in

the shooting (*id.*, at 216-31).  After receiving *Miranda* warnings, Petitioner gave a written

statement to the police, as well as a videotaped statement to an assistant district attorney; in both statements, Petitioner admitted that he had had a gun with him on the day of the shooting and that he had shot Henley (*id.*, at 288-95).

**B.      Procedural History**

**1.      Trial and the Challenged Jury Charge**

Petitioner was charged in an indictment with murder in the second degree, under New York Penal Law § 125.25[1] (*see* Tr., at 418), and was brought to trial in April 2005, in the Supreme Court of the State of New York, Bronx County (*see id.*, at 1).[1]

In its final jury charge (which is the subject of Petitioner's pleaded habeas claims), the trial court instructed the jury generally regarding principles applicable to criminal trials. With respect to the burden of proof, the court instructed the jury regarding the presumption of innocence and the reasonable-doubt standard (*see generally id.*, at 411-15), and explained that:

> No defendant, remember, is required to prove anything at all. The burden is always on the State, on always on the People, always on the prosecution. No defendant, it never shifts to a defendant.

(*Id.*, at 411; *see also id.*, at 419-20 (instructing the jury that it could not find Petitioner guilty without finding that the People had proven each of the elements of the crime beyond a reasonable doubt).)

At the conclusion of its charge, the court instructed the jury to keep an open mind during its deliberations (*id.*, at 424-25), and further stated:

> Who speaks the truth here? This is the question you must go upstairs and grapple with. And you do so to the best of your ability, you apply common sense, you apply good judgment. You

_____

[1] The trial transcript submitted to this Court does not include any pre-trial proceedings that may have taken place; nor does it include jury selection or sentencing proceedings.

> are impartial, you're fair, you're objective, you're not swayed by
> sympathy because someone died here or prejudice because
> unfortunately there is crime, no.
>
> You do it wholly, solely, totally, exclusively on the evidence or the
> lack or insufficiency thereof.  . . . .

(*Id.*, at 425-26.)  Petitioner's counsel did not object to this instruction.  (*See id.*)

The trial court charged the jury on murder in the second degree, as set forth in the

indictment against Petitioner, explaining that a person is guilty of this crime when, "with the

intent to cause death of another person, he causes the death of such person."  (*Id.*, at 418-19.)

The court also charged the jury on the lesser-included offense of manslaughter in the first

degree, under New York Penal Law § 125.20[1], explaining that a person is guilty of this crime

when, "with intent to cause serious physical injury to another person, he causes the death of such

person."  (*Id.*, at 420-22.)  Although, in a charging conference, defense counsel had requested

that the court also charge, as an additional lesser-included-offense, manslaughter in the second

degree, under New York Penal Law § 125.15[1] (for "recklessly caus[ing] the death of another

person"), the prosecution opposed and the court denied that request (*id.*, at 328-30), and thus the

court did not include that additional charge in its jury instructions.

## 2.   <u>Conviction and Sentence</u>

On May 18, 2005, upon a jury verdict, Petitioner was convicted of manslaughter in the

first degree, in violation of New York Penal Law § 125.20[1].  (*See* Petition, dated July 30, 2010

("Pet.") (Dkt. 2), ¶¶ 3, 5; Declaration of Christopher J. Blira-Koessler, Esq., in Opposition to

Petitioner for a Writ of Habeas Corpus, dated Jan. 13, 2011 ("Blira-Koessler Decl.") (Dkt. 7),

¶ 4.)  For this crime, Petitioner was sentenced to a determinate term of imprisonment of 25 years,

and five years of supervised release.  (Pet. ¶ 4; Blira-Koessler Decl. ¶ 4.)

3.     **Direct Appeal**

Petitioner filed a direct appeal, submitting a brief, through counsel, to the Appellate

Division, First Department (Blira-Koessler Decl., Ex. 1 (Brief for Defendant-Appellant, dated

May 2007)), and also submitting a *pro se* supplemental brief (*id.*, Ex. 3 (Pro-Se Brief for

Appellant, dated Feb. 19, 2008)).  In the brief filed by his appellate attorney on his behalf,

Petitioner challenged, under both the federal and state constitutions, the trial court's "who-

speaks-the-truth" instruction, arguing that this instruction improperly shifted the burden of proof

to the defense.  (*See* Blira-Koessler Decl., Ex. 1, at 18-20.)[2]  In his *pro se* supplemental brief,

Petitioner also argued that, in violation of his federal and state constitutional rights, the trial

court had erred in failing to charge second-degree manslaughter.  (*See generally* Blira-Koessler

Decl., Ex. 3.)

By decision dated June 30, 2009, the Appellate Division unanimously affirmed

Petitioner's conviction and sentence, ruling as follows with respect to Petitioner's challenge to

the trial court's "who-speaks-the-truth" charge:

> Defendant's challenge to a phrase in the court's charge is
> unpreserved and we decline to review it in the interest of justice.
> As an alternative holding, we find no basis for reversal.  The query
> 'who speaks the truth,' a part of an old pattern charge that was
> superseded by the Criminal Jury Instructions, should be avoided
> (*see e.g. People v. Pippin*, 67 AD2d 413, 418, 415 NYS2d 654
> [1979]).  However, viewing the main and supplemental charges as
> a whole, we find no reasonable possibility the jury could have
> misunderstood this language as reducing the People's burden of
> proof, shifting that burden, or commenting adversely on
> defendant's failure to testify.

---

[2] In that same brief, Petitioner challenged his sentence as excessive (*see id.*, at 20-26), a
claim that has not been raised in this habeas proceeding.

*People v. Moret*, 882 N.Y.S.2d 412, 413 (1st Dep't 2009).  As to Petitioner's *pro se* challenge to

the trial court's denial of counsel's request for a second-degree manslaughter charge, the

Appellate Division merely ruled that it had "considered and rejected defendant's pro se claims."

*Id*.

By letter dated September 10, 2009, Petitioner, through counsel, sought leave to appeal to

the New York Court of Appeals.  (Blira-Koessler Decl., Ex. 4.)  In his leave application,

Petitioner specified that he sought to appeal based on the issues raised in both his counseled and

*pro se* briefs to the Appellate Division; in particular, his application highlighted his challenges to

the "who-speaks-the-truth" charge and to the trial court's refusal to charge second-degree

manslaughter.  (*See id*.)  The Court of Appeals denied leave to appeal on October 27, 2009,

without opinion.  *People v. Moret*, 13 N.Y.3d 837 (2009).

### 4.   Federal Habeas Petition and Proceedings

Petitioner filed his habeas Petition in this Court on July 30, 2010,[3] raising two claims.

For his first claim, Petitioner asserted that he "was denied his due process right to a fair trial by

the [trial] court[']s 'who speaks the truth' charge," which, Petitioner further contended, violated

his constitutional "privile[]ge against self-incrimination."  (Pet. ¶ 13 (capitalization omitted)

(citing the Fifth and 14th Amendments).)  For his second claim, Petitioner asserted that the trial

court "erred in denying counsel's request to charge second degree manslaughter as a lesser

---

[3] Although the Court's docket reflects a filing date of September 8, 2010 for the Petition
(Dkt. 2), a *pro se* prisoner's papers are deemed filed when they are handed over to prison
officials for forwarding to the Court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  Thus, in
the absence of evidence to the contrary, the Court will deem the Petition to have been filed on
July 30, 2010, the date Petitioner signed it.  *See, e.g.*, *Rhodes v. Senkowski*, 82 F. Supp. 2d 160,
165 (S.D.N.Y. 2000).

included offense to intentional murder." (*Id.* (capitalization omitted) (citing the 14th

Amendment).)

By Order dated November 8, 2010, this Court set a schedule for Respondent to file an

opposition to the Petition, and for Petitioner to file a reply. (Dkt. 5.)  Under that Order,

Respondent's opposition was due December 30, 2010, and Petitioner's reply, if any, was due

January 31, 2011. (*See id*.)  At Respondent's request, the Court then modified that schedule to

allow Respondent to file his opposition by January 14, 2011, and for Petitioner to file a reply by

February 14, 2011. (Dkt. 6.)

Respondent timely filed an opposing declaration and memorandum of law on January 13,

2011 (Dkt. 7), but, on February 4, 2011, the Court received a letter from Petitioner, requesting

leave to withdraw his Petition without prejudice (Dkt. 9).  In his letter, Petitioner stated the

following:

> This request is so that I can exhaust 2 state and federal
> constitutional violations.  The reason I am requesting this now is
> because I have just received my full trial transcripts thanks to the
> help of my family.  Had I had these transcripts much earlier there
> exist[s] a possibility I may have raised them with the state court.
> These two issues are Ineffective assistance of Counsel, for
> Counsel's failure to protect my right to a trial by a fair and
> impartial Jury, and the other is that my Jury was not sworn in
> accord with the Constitution. . . .  Immediately after my issues are
> exhausted fully in the state I will refil[e] my habe[as] application
> which would include my unexhausted issues. . . .

(*Id.*)  Petitioner also stated that he was planning to raise his unexhausted claims in the state court

"no later than March 9th 2011" by way of a collateral proceeding under Section 440 of the New

York Criminal Procedure Law, and he urged this Court to permit him to withdraw his Petition so

that he would not later be barred from raising these new claims in a second habeas petition. (*See*

*id.* (noting that he would "not meet the criteria for the successive habe[as] statute").)

7

By Order dated April 21, 2011 (Dkt. 8), this Court cautioned Petitioner that, although he could choose to withdraw his Petition voluntarily, if he did so and then sought to re-file it later, after all of his claims were exhausted, his originally-pleaded claims might then be time-barred under the governing one-year statute of limitations (*id.*).  The Court thus directed Petitioner to notify it in writing, no later than May 13, 2011, whether he still wished to withdraw the Petition, or whether, alternatively, he wished to have this Court stay the federal proceedings and hold his Petition in abeyance, while he sought to exhaust his additional claims.  (*See id.*)  The Court instructed Petitioner that, if he wished to pursue the latter course, "then he should make an appropriate motion explaining why, under *Rhines v. Weber*, 544 U.S. 269 (2005), such relief would be appropriate in this case."  (*Id.*)  "In particular," the Court directed, "Petitioner should explain, in detail, why he believes that his unexhausted claims have merit and why he failed to present them to the state courts prior to filing this action."  (*Id.*)

On June 1, 2011, the Court received a letter from Petitioner dated April 11, 2011, seeking a "stay and abeyance," under *Rhines*, and leave to amend his Petition to add three unexhausted claims.  (Dkt. 10.)  In this letter, Petitioner briefly described the substance of the two unexhausted claims he had previously mentioned, and cited certain case law on which those claims were based.  (*See id.*, at 1-2.)  From his description of those claims, it appears that Petitioner was seeking leave to plead that the jury at his trial had not been properly sworn and that his trial counsel was ineffective for failing to object to the lack of a proper jury oath.  (*See id.*)  Petitioner also sought leave to plead a third a claim for ineffective assistance of appellate counsel, based on his appellate counsel's failure to raise these claims on direct appeal.  (*See id.*, at 1.)  Petitioner indicated that he planned to raise this third claim before the state courts in an application for a writ of error *coram nobis*.  (*See id.*, at 1.)

8

In support of his application for a stay, Petitioner wrote:

> The reason why I did not raise this in any prior motions was
> because I did not have my full trial minutes, not to mention I don't
> really know the law in the first place.  It was not until I received
> my full transcript, that I learned from a law clerk about these 2
> new claims. . . .  Had I known about these issues prior to me filing
> my habe[as] I would have raised them in the state court. . . .

(*Id.*, at 1.)

After reviewing Petitioner's April 11, 2011 letter, this Court again issued an Order,

stating:

> To the extent Petitioner is seeking equitable tolling of the statute of
> limitations on the ground that he was unable to obtain necessary
> transcripts on a timely basis, he is directed to supplement [his]
> submission with a detailed explanation of the efforts he made to
> obtain the transcripts, when he made those efforts, and the results
> of those efforts – including when the transcripts were actually
> obtained.

(Dkt. 10 (Mem. Endors., dated June 20, 2011).)  By follow-up Order dated July 25, 2011, the

Court specified that any such supplemental submission should be made no later than August 12,

2011.

The Court has received no further submissions from Petitioner.  The Court did, however,

reach out to Respondent's counsel to ask for copies of any new papers that had been filed in the

state court, with respect to Petitioner's unexhausted claims.  In response to the Court's request,

Respondent submitted, on November 7, 2012, copies of papers that had been filed by the parties

in the state trial court, in connection with a motion brought there by Petitioner, in or about

July 2011, seeking to vacate his conviction under N.Y.C.P.L. § 440.10(1)(H).  (*See* Letter to

U.S. Magistrate Judge Debra Freeman, from Christopher John Blira-Koessler, Esq., dated

Nov. 7, 2012 ("11/7/12 Letter") (Dkt. 19).)  The Court takes judicial notice of the fact that this

9

motion was denied in its entirety by the trial court on March 30, 2012.  *People v. Moret*, 951 N.Y.S.2d 88 (Sup. Ct. 2012).  The Court has heard nothing from Petitioner, himself, regarding the status of his state-court proceedings.  Thus, the Court is unaware of whether Petitioner sought to appeal from the trial court's denial of his Section 440.10 motion, or whether Petitioner ever commenced a *coram nobis* proceeding.

## DISCUSSION

### I.   PETITIONER'S REQUEST FOR A STAY OF THESE PROCEEDINGS AND FOR LEAVE TO AMEND THE PETITION

A federal court may not consider a petition for a writ of habeas corpus unless the petitioner has exhausted all state judicial remedies.  28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Doresy v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997).  To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "'opportunity to pass upon and correct alleged violations of . . . prisoners' federal rights."  *Picard*, 404 U.S. at 275 (citing *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)).  Once the state courts are appraised of the constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented to "the highest court of the pertinent state."  *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citation omitted).

Where a habeas petitioner seeks to raise both exhausted and unexhausted claims, the court, in its discretion, may stay the proceedings and hold the petition in abeyance, so as to permit the petitioner the opportunity to exhaust any unexhausted claims in state court, assuming an avenue for exhaustion is still available.  *See Rhines v. Weber*, 544 U.S. at 277-78.  If, however, the unexhausted claims are plainly meritless, or if the petitioner has not shown good

10

cause for his failure to exhaust those claims, then the issuance of a stay would be an abuse of the court's discretion.  *See id.*, at 277; *see also Thristino v. U.S.*, 379 F. Supp. 2d 510, 519 (S.D.N.Y. 2005) (noting that *Rhines* does not mandate that a district court automatically grant stay and abeyance, but is instead a "case-specific inquiry within the discretion of the district court").

Since *Rhines*, courts have varied in their interpretations of the standard for "good cause." *See, e.g.*, *Fernandez v. Artuz*, No. 00 Civ. 7601 (KMW) (AJP), 2006 WL 121943, at *5 (S.D.N.Y. Jan. 18, 2006) (collecting cases); *see also Torres v. Graham*, No. 06 Civ. 0785, 2007 WL 1233555, at *5 (E.D.N.Y. Apr. 20, 2007) ("Neither the Supreme Court nor any circuit court has defined what constitutes 'good cause' for a failure to exhaust.").  Where courts in this circuit have found "good cause," it is typically when the petitioner has made some showing that "external factors" – that is, factors outside of the petitioner's own control – have prevented the petitioner from exhausting his claims.  *See Ramdeo v. Phillips*, No. 04-CV-1157 (SLT), 2006 WL 297462, at *6 (E.D.N.Y. Feb. 8, 2006) (citing cases); *see also Fernandez*, 2006 WL 121943, at *7 (finding "good cause" where petitioner sought stay because his attempt to exhaust claim had been significantly delayed "by the prosecution and other circumstances beyond [petitioner's] control").  A lack of knowledge of legal procedures, in itself, is insufficient to find "good cause."  *See Ramdeo*, 2006 WL 297462, at *7 (finding no "good cause" established, where petitioner "tacitly admit[ed] that the failure to exhaust is attributable to his own ignorance of the law").

Here, Petitioner has provided only the most cursory description of his unexhausted claims, despite the Court's instruction that, if he wished to apply for a *Rhines* stay, he should provide the Court with a detailed explanation as to why he believes those claims to have merit. More significantly, Petitioner has not, by any rational standard, shown "good cause" for his

failure to exhaust his new claims.  Instead, Petitioner has only stated that he did not "really know the law in the first place," and that he was unaware of these claims until he received a copy of the full transcript of his trial proceedings and learned about the claims from a "law clerk." (Dkt. 10.)  As noted above, ignorance of the law does not constitute "good cause" for a failure to exhaust.  Moreover, although this Court instructed Petitioner to explain the efforts he made to obtain the transcript, and to state when he received it, Petitioner has not given the Court this information.  Petitioner, therefore, has not credibly demonstrated that there were any external factors that prevented him exhausting his unexhausted claims prior to commencing this habeas proceeding.

Even beyond his lack of responsiveness to this Court's Order, Petitioner's own statements to the state court, made in the context of the collateral proceeding he eventually commenced in the trial court to raise his new claims, belie any contention that Petitioner could not have known of the substance of his claims until he obtained the full trial transcript.  In that state-court proceeding, in support of his claims regarding the supposed failure of the trial court to administer a proper juror oath and the failure of Petitioner's counsel to raise an objection, Petitioner submitted a sworn statement that he had actual knowledge of these issues *at the time they arose*.  Specifically, Petitioner told the state court that he knew, at the time the jury was seated, that the proper oath had not been administered, and that he instructed his trial counsel to raise an objection at that time, which counsel failed to do.  (*See* 11/7/12 Letter, Ex. 1, at 10 (Sworn Statement in Support of Motion to Vacate the Judgment).)  Based on these assertions, Petitioner cannot now be heard to contend that he only learned belatedly of the factual predicate and legal bases of his unexhausted claims.

As Petitioner has not shown "good cause" for failing to exhaust his proposed additional claims, it would be an abuse of discretion for this Court to grant Petitioner's application for a stay.  *See Rhines* 544 U.S. at 277.  Similarly, Petitioner's proposed amendment to the Petition, to add his new claims, must be denied as futile.  *See Scott v. Phillips*, No. 05-CV-0142 (CBA), 2007 WL 2746905, at *6 (E.D.N.Y. Sept. 19, 2007) (denying motion to amend petition to add unexhausted claim, as petitioner did not demonstrate "good cause" for failing to exhaust claim in state court); *Ramdeo*, 2006 WL 297462, at *4 ("[I]f this Court is not prepared to grant petitioner a stay pending his exhaustion [of the claims at issue], it would be futile to grant leave to amend the petition.").[4]

## II.   <u>PETITIONER'S ORIGINALLY-PLEADED HABEAS CLAIMS</u>

Based on the procedural history set out above, the two claims pleaded by Petitioner in his habeas Petition were both timely asserted in this Court and fully exhausted.  Petitioner, however, cannot prevail on either claim.

---

[4] It also seems likely that any amendment to the Petition to add these new claims would be futile because these claims were time-barred, even by the time Petitioner first mentioned them to this Court.  For the reasons stated above, Petitioner cannot show that he belatedly discovered the "factual predicate" of his claims, *see* 28 U.S.C. § 2244(d)(1)(D), and thus the one-year statute of limitations applicable to his claims began to run on January 25, 2010 (at the close of the 90-day period for seeking certiorari, following the October 27, 2009 denial of Petitioner's application for leave to appeal to the Court of Appeals), and the limitations period would have expired on January 25, 2011, *see* 28 U.S.C. § 2244(d)(1)(A); *see also Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001).  Yet Petitioner first referenced his new claims in his letter to the Court seeking leave to withdraw his Petition, and, while that letter (Dkt. 9) was undated, it was postmarked February 1, 2011, suggesting that Petitioner gave it to prison officials for mailing after the statute of limitations had run.  Assuming Petitioner's claims were already time-barred when raised, the Court notes that Petitioner has never offered any viable basis for tolling the statute of limitations, and cannot show that his unexhausted claims "relate back" to the date of the filing of his original Petition.  *See* Fed. R. Civ. P. 15(c); *see also Espiritu v. Haponik*, No. 05 Civ. 7057 (RJS), 2012 WL 161809, at *9 (S.D.N.Y. Jan. 19, 2012) (noting that, in the habeas context, a claim will not "relate back" where it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth").

### A.     Challenge to the Trial Court's "Who-Speaks-the-Truth" Charge

#### 1.     The Claim Is Procedurally Barred

Federal habeas review of a claim is not available where the same claim has been decided by a state court, and the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  The state law ground may be substantive or procedural, *id.*, such as a failure to comply with a state preservation requirement.

In evaluating whether the state court has found a claim to be procedurally defaulted under state law, this Court must look to the last-reasoned state court opinion.  *See Ylst*, 501 U.S. at 803.  To determine that the state law ground on which the state court rested was "truly an *independent* basis for decision" rather than "merely a passing reference, . . . such reliance on state law must be clear from the face of the opinion."  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (emphasis added) (quoting *Coleman*, 501 U.S. at 732 (internal quotation marks omitted)); *see also Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997) (to preclude federal review, "the last state court to render judgment must 'clearly and expressly state[] that its judgment rest[ed] on a state procedural bar'" (citation omitted; alterations in original)).  To be deemed *adequate*, the state procedural rule on which the court's decision was based must be a rule that is "firmly established and regularly followed" by the state in question, *see Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (internal quotation marks and citation omitted), and must not have been "misapplied in [the petitioner's] case in particular," *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (internal quotation marks and citation omitted).

In this case, the last-reasoned state court decision is that of the Appellate Division, and it is clear from the face of that decision that the court rejected, as unpreserved, the claim that

Petitioner sought to raise in connection with trial court's "who-speaks-the-truth" instruction to the jury.  *See Moret*, 882 N.Y.S.2d at 413.[5]  Thus, lack of preservation constitutes an "independent" state-law procedural ground for the state courts' rejection of this claim.  *See, e.g.*, *Guity*, 2007 WL 3284694, at *7-8 (holding that "the Appellate Division's decision that [the] [p]etitioner's remaining contentions were 'unpreserved' [was] sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue" (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989))).

Further, New York's preservation rule, requiring that parties raise specific contemporaneous objections to a trial court's rulings before challenging them on appeal, *see* N.Y.C.P.L. § 470.05(2), affords an "adequate" basis for the Appellate Division's decision.  *See generally Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999); *Alvardo v. Burge*, No. 05 Civ. 1851 (AKH), 2006 WL 1840020, at *2 (S.D.N.Y. June 30, 2006).  New York courts have repeatedly held that, in the absence of objections during trial, a criminal defendant's challenges to jury instructions will be unpreserved for appellate review, *see, e.g.*, *People v. Bowman*, 977 N.Y.S.2d 650, 651 (4th Dep't  2014); *People v. Chin*, 971 N.Y.S.2d 300, 300-01 (1st Dep't 2013); *People v. Rosado*, 947 N.Y.S.2d 434, 435 (1st Dep't 2012), and there is no basis for this Court to find that the state's preservation rule was inappropriately applied in this case, *see Cotto*, 331 F.3d at 240, as nothing in the record suggests that the claims that Petitioner raises here were, in fact, presented at trial.

---

[5] The fact that the Appellate Division also based its rejection of Petitioner's claim on an "alternative holding" that the claim lacked merit, *id.*, does not alter the fact that the claim is procedurally barred from habeas review, *see Guity v. Ercole*, No. 07 Civ. 0728 (RPP), 2007 WL 3284694, at *4, *7-8 (S.D.N.Y. Nov. 6, 2007).

For these reasons, Petitioner's claim regarding the trial court's "who-speaks-the-truth" instruction is procedurally barred from federal habeas review,  *see, e.g.*, *Zarvela v. Artuz*, 364 F.3d 415, 419 (2d Cir. 2004) ("The District Court correctly held that petitioner's claim was procedurally defaulted for lack of a contemporaneous objection and petitioner has not attempted to show cause and prejudice for the default."); *Robinson v. Smith*, No. 09 Civ. 8222 (GBD) (AJP), 2011 WL 1849093, at *26 (S.D.N.Y. May 17, 2011) (finding that petitioner's challenge to jury instruction was procedurally barred where Appellate Division had rejected the claim as unpreserved), *report and recommendation adopted by* 2011 WL 3163466 (S.D.N.Y. July 26, 2011), and this Court may only consider the claim if Petitioner is able to overcome the procedural bar.

Petitioner may overcome his procedural default by showing either (1) both cause for failing to raise his claim properly in state court and prejudice resulting from the alleged constitutional error, or (2) that the failure to address the claim on habeas would result in a "fundamental miscarriage of justice."  *Coleman,* 501 U.S. at 750.

"Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Ayuso v. Artuz*, No. 99 Civ. 12015 (AGS) (JCF), 2001 WL 246437, at *8 (S.D.N.Y. Mar. 7, 2001).  More specifically, a petitioner can show "cause" for a procedural default when (1) "the factual or legal basis for a claim was not reasonably available," (2) "'some interference by state officials' made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel."  *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994).  "Prejudice" requires a petitioner to demonstrate that the alleged constitutional error worked to the petitioner's "actual

16

and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

To establish that a "fundamental miscarriage of justice" has occurred, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier*, 477 U.S. at 496. "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In this instance, Petitioner has neither asserted any "cause" for his procedural default nor demonstrated the requisite "prejudice." Nor has Petitioner shown any probability that this Court's failure to review his claim would result in a fundamental miscarriage of justice, as he has offered no new evidence, scientific or otherwise, showing his actual innocence.

As Petitioner thus cannot overcome the procedural bar to this Court's review of his challenge to the trial court's "who-speaks-the-truth" jury instruction, the Court should dismiss that claim as procedurally barred.

## 2. The Claim Is, In Any Event, Without Merit

Even if Petitioner's claim were not procedurally barred, it would be subject to dismissal for lack of merit, as the Appellate Division's alternative ruling, finding that the jury charge, viewed in its entirety, was not constitutionally defective, would be entitled to deference under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

As set out above, the Appellate Division explained that, while the "who-speaks-the-truth" jury instruction "should be avoided," there was "no reasonable possibility" in Petitioner's case – in light of the "main and supplemental charges [viewed] as a whole" – that "the jury could have

17

misunderstood this language as reducing the People's burden of proof, shifting that burden, or

commenting adversely on defendant's failure to testify." *Moret*, 882 N.Y.S.2d at 413. Where,

as here, a federal constitutional claim has been adjudicated on the merits by the state court, this

Court must consider the claim under the standard of review dictated by AEDPA, which provides

that:

> [a]n application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim – (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established [f]ederal law,
> as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).[6]

Under AEDPA, a state court decision is "contrary to" clearly established federal law

where the state court either applies a rule that "contradicts the governing law" set forth in

Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a

[Supreme Court] decision" and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362,

405-06 (2000). An "unreasonable application" of clearly established federal law occurs when

the state court identifies the correct governing legal principle, but unreasonably applies that

principle to "a set of facts different from those of the case in which the principle was

announced." *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003). The state court's decision,

however, "must have been more than incorrect or erroneous"; rather, "[t]he state court's

---

[6] In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams v. Taylor*, 529 U.S. at 409).  Under this "difficult to meet" standard, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  In order to be entitled to habeas relief, the petitioner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-87.[7]

In this instance, it is plain that the Appellate Division's rejection of Petitioner's "who-speaks-the-truth" jury instruction was not an unreasonable application of clearly established federal law, as determined by the Supreme Court.  In *Cupp v. Naughten*, 414 U.S. 141 (1973), the Supreme Court addressed a constitutional due-process challenge to an instruction that "every witness is presumed to speak the truth," where the defense had presented no witnesses.  The Court noted that, even where a particular instruction was erroneous, a reviewing court must ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  414 U.S. at 147.  In *Naughten*, the Court found that the jury charge had

---

[7] The Supreme Court has emphasized that "clearly established [f]ederal law" refers only to the "'holdings, as opposed to the dicta, [of the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. at 412); *see also Rodriguez v. Miller*, 537 F.3d 102, 106-07 (2d Cir. 2008) ("*Musladin* admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions.").  Thus, a principle of constitutional law "grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot provide the basis for habeas relief.  *Id.* (citing *Musladin*); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." (internal quotation marks omitted)).

not violated due process, given that the jury had been fully informed of the prosecution's burden

to prove guilt beyond a reasonable doubt, and that the trial court had also specifically instructed

the jury to consider the manner of the witnesses, the nature of the testimony, and other matters

related to the possibility that a witness would testify falsely.  *Id.*, at 148-49; *see also Justice v.*

*Hoke*, 45 F.3d 33, 34-35 (2d Cir. 1995) (explaining that, "when reviewing a jury charge for

constitutional infirmity, [a court] must consider the challenged portion of the charge not 'in

artificial isolation,' but rather 'in the context of the overall charge'" (quoting *Naughten*, 414 U.S.

at 146-47)).

     Here, as the Appellate Division pointed out, the trial court clearly instructed the jury, on

multiple occasions, that the prosecution bore the burden of proving its case beyond a reasonable

doubt (*see* Tr., at 411, 413-16; *see also id.*, at 419-20), and further instructed the jury that the

jury was not permitted to draw an unfavorable inference from the fact that Petitioner did not

testify (*id.*, at 409).  In light of this context, the particular charge challenged by Petitioner, even

if improper, cannot be said to have so tainted the trial that Petitioner was deprived of his federal

right to due process.  *See Naughten*, 414 U.S. at 146-47; *Persaud v. Mantello*, No. 99-CV-1861

(NG), 2002 WL 1447484, at *6, n. 2 (E.D.N.Y. July 2, 2002) (finding that trial court's

instruction to jury of "[w]hat is the truth?  That is a question for you to determine" was not

constitutionally invalid in light of the trial court's extensive instruction on the burden of proof);

*Bacchus v. New York State*, Nos. 93-CV-1247 (DGT), 94-CV-3073 (DGT), 1995 WL 62599, at

*8 (E.D.N.Y. Feb. 8,1995) ("When the charge is viewed as a whole, it becomes clear that despite

the presence of the instruction 'who speaks the truth,' there is no reasonable likelihood that the

jury understood the instructions to allow a conviction on proof insufficient to establish

petitioner's guilt of every element of the crimes charged beyond a reasonable doubt.").

Thus, the decision of the Appellate Division, which rejected Petitioner's constitutional claim relating to the "who-speaks-the-truth" instruction in light of the trial court's broader charge, was neither contrary to nor an unreasonable application of Supreme Court precedent. Accordingly, even if Petitioner's claim were not procedurally barred, this Court would still recommend its dismissal.

**B.      Challenge to the Trial Court's Refusal to Charge Second-Degree Manslaughter, as a Lesser-Included Offense to Intentional Murder**

Petitioner's second habeas claim is that the trial court's refusal to charge second-degree manslaughter as a lesser-included offense to intentional murder violated his right to due process. Petitioner raised this claim before the Appellate Division, in a *pro se* application, and the Appellate Division stated that it had "considered and rejected" all of Petitioner's *pro se* claims. *See Moret*, 882 N.Y.S.2d at 413; Blira-Koessler Decl., Ex. 3.  In this circumstance, the claim should be considered to have been "adjudicated on the merits," such that this Court should review the claim under the AEDPA standard of review, rather than *de novo*.  *Francolino v. Kuhlman*, 365 F.3d 137, 141 (2d Cir. 2004).  Under the deferential AEDPA standard, the claim must be dismissed, as the Supreme Court has not held that, in a non-capital case, a trial court's refusal to charge a lesser-included offense constitutes constitutional error.  Furthermore, as discussed further below, it cannot even be said that the state court's charge constituted error under state law, much less that the error was so severe as to rise to the level of a federal due process violation.

Although the Supreme Court has held that a jury instruction on a lesser-included offense is required in capital cases, where the evidence would have supported such a verdict, the Supreme Court has expressly *declined* to decide the question of whether the Due Process Clause

requires lesser-included offenses to be charged in non-capital cases.  *See Beck v. Alabama*, 447 U.S. 625, 627, 638, n.14 (1980); *see also Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996) (noting that, "a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule"); *Mangum v. Lee*, No. 12 Civ. 7122 (PAC) (FM), 2013 WL 6037172, at *2 (S.D.N.Y. Nov. 14, 2013) (noting that "there is no 'clearly established' U.S. Supreme Court precedent requiring a jury instruction on a lesser included offense" in non-capital cases); *Pearson v. Racette*, No. 11 Civ. 3452 (BSJ) (MHD), 2012 WL 4513468, at *18 (S.D.N.Y. Aug. 3, 2012), *report and recommendation adopted by* 2012 WL 4513656 (S.D.N.Y. Oct. 2, 2012); *White v. Connolly*, No. 11 Civ. 135 (NRB), 2012 WL 603705, at *1-2 (S.D.N.Y. Feb. 23, 2012).

In the absence of Supreme Court precedent requiring that lesser-included offenses be charged in non-capital cases, the Appellate Division's rejection of Petitioner's claim cannot have been "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or an unreasonable application of "clearly established federal law."  28 U.S.C. § 2254(d)(1); *see Pearson*, 2012 WL 4513468, at *18; *Garcia v. Bradt*, No. 09 Civ. 7941 (VB) (PED), 2012 WL 2426773, at *11 (S.D.N.Y. Jan. 24, 2012), *report and recommendation adopted by* 2012 WL 3027780 (S.D.N.Y. Jul. 23, 2012); *Marquez v. Artuz*, No. 08 Civ. 10847 (PKC) (HBP), 2011 WL 7445518, at *4 (S.D.N.Y. Oct. 17, 2011), *report and recommendation adopted by* 2012 WL 691449 (S.D.N.Y. Mar. 2, 2012).

Moreover, this cannot be said to be a situation where an error of state law was so egregious as to have rendered Petitioner's trial fundamentally unfair, thereby raising due process concerns.  *See, e.g.*, *Dowling v. United States*, 493 U.S. 342, 352 (1990).  To the contrary, the

trial court's refusal to charge second-degree manslaughter was entirely appropriate, under state law.

> Under New York law,
>
> > [t]here is a two-part test to determine whether a lesser included offense charge should be submitted to a jury.  The defendant must first prove that it is impossible to commit the greater crime without necessarily committing the lesser and there must be a reasonable view of the evidence which would support a finding that the defendant committed only the lesser offense.

*People v. Barney*, 99 N.Y.2d 367, 371 (2003).  In deciding whether to submit a lesser-included offense to the jury, the trial court must look at the evidence in the light most favorable to the defendant, recognizing that the jury may accept or reject any or all of the evidence that was given.  *See Pearson*, 2012 WL 4513468, at *20 (citing *People v. Galvin*, 479 N.Y.S.2d 896, 898 (3d Dep't 1984) (citing *People v. Henderson*, 41 N.Y.2d 233, 236 (1976)), *aff'd as modified*, 65 N.Y.2d 761 (1985))).  In this case, the trial court refused to charge manslaughter in the second degree, which requires a showing that the defendant *recklessly* caused the death of another person.  N.Y.P.L. § 125.15.  Instead, the trial court submitted to the jury the charges of manslaughter in the first degree, *id.* § 125.20, and murder in the second degree, *id.* § 125.25, which require, respectively, a showing that the defendant *intentionally* caused serious injury to, or death of, another person.

This Court agrees that no reasonable view of the evidence adduced at Petitioner's trial would have supported a finding that he acted recklessly in killing Henley, as would have been required to support a finding that Petitioner committed manslaughter in the second degree.  The evidence showed that Petitioner fired four shots at Henley from 10 feet away (*see* Tr., at 56, 163-65, 243-45), that Petitioner also shot Henley while he was lying on the ground (*id.*, at 187-90),

and that three of the shots fired at Henley hit him in the neck, back, and side, perforating, *inter alia*, Henley's bowels, spleen, spinal cord, and right lung, and causing his death (*see id.*, at 241, 243-45).  The only reasonable interpretation of this evidence is that the shooting was intentional, and, indeed, New York courts have held as much, in similar cases.  *See, e.g.*, *People v. Payne*, 3 N.Y.2d 266 (2004) ("[I]t should be obvious that the more the defendant shoots . . . . the victim, the more clearly intentional is the homicide."); *People v. Choi*, 669 N.Y.S.2d 815 (1st Dep't 1998) ("[T]he court properly refused to submit second-degree manslaughter as a lesser included offense" where the "evidence established that, after engaging in a physical altercation, defendant pursued his unarmed, fleeing victim and, at close range, with the intent to cause him at least serious physical injury, twice shot at his victim."); *People v. Evans*, 648 N.Y.S.2d 556 (1st Dep't 1996) (finding that trial court properly declined to submit lesser-included offense of second-degree manslaughter, because, "[g]iven the testimony that the shots were fired during a heated discussion and from a distance of only a few feet, and the fact that two of the bullets entered the victim's body, the only reasonable interpretation is that the shooting was intentional"); *People v. Mitchell*, 627 N.Y.S.2d 771 (2d Dep't 1995) ("[N]o reasonable view of the evidence at trial would support a finding that the defendant acted other than intentionally.  The defendant shot [the victim] three times at close range, and all three shots hit vital organs.").

Moreover, in statements that were shown to the jury, Petitioner admitted to the police that he acted intentionally in shooting Henley.  (Tr., at 293-95 ("One [k]id was on the floor.  When he got up, he thought I hit him, whatever.  And he swung at me.  I blocked and threw my hands up.  At that point I looked back and seen all these other people coming at me.  So I pulled out [my gun] and shot the kid.").)  New York courts have found that, where a defendant admits to intentional conduct, the defendant is not entitled to a charge on a recklessness theory.  *See,*

*e.g.*, *People v. Sussman*, 748 N.Y.S.2d 552 (1st Dep't 2002) ("Viewing the evidence in the light most favorable to defendant, there was no reasonable view of the evidence that would support a conviction of second-degree manslaughter but not first-degree manslaughter.  While defendant's statement to the police, at best, negated an intent to cause death, it clearly admitted an intent to cause serious physical injury to the victim.  Thus, by admitting intentional conduct, defendant negated any theory of recklessness."); *People v. Gordon*, 636 N.Y.S.2d 317 (1st Dep't 1996) (concluding that trial court properly refused to charge the jury on second degree manslaughter where "[t]he evidence, including defendant's confession in which he admitted intentional conduct, negated any theory of recklessness"); *cf. People v. Bloomfield*, 589 N.Y.S.2d 595 (2d Dep't 1992) ("[T]he defendant argues that the medical evidence and certain testimony, which indicated that he was being chased by the victim between the first and second shot[,] supplied a reasonable basis upon which the jury could have concluded that the defendant merely acted recklessly in firing at the victim . . . we find that no reasonable view of the evidence would support a finding that the shooting was 'reckless' and that the defendant committed the lesser offense but not the greater [offense of intentional murder].").

As the trial court did not commit an error of state law by refusing to charge the jury on second degree manslaughter, the trial court's refusal certainly was not "sufficiently harmful to make the conviction unfair," such that Petitioner's right to due process was violated.  *Jackson v. Edwards*, 404 F.3d 612, 624 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also Reed v. Smith*, No. 08 Civ. 9311 (NSR) (LMS), 2014 WL 547024, at *16 (S.D.N.Y. Feb. 7, 2014) ("If a petitioner cannot establish that state law entitled him or her to the omitted instruction, then he or she has necessarily failed to allege a deprivation of due process, and the claim must be denied." (citation omitted)).  Accordingly, there is no reason for this Court to

disturb the decision of the Appellate Division, rejecting the second claim that Petitioner has

asserted in his habeas Petition, and I therefore recommend that this second claim be dismissed.

## CONCLUSION

For all of the foregoing reasons, I recommend that these proceedings not be stayed and

held in abeyance pending the exhaustion of any additional claims that Petitioner may wish to

assert, that Petitioner's request for leave to amend his Petition to add unexhausted claims be

denied, and that the Petition, as pleaded, be dismissed in its entirety.

Dated:   New York, New York
       April 2, 2014

Respectfully submitted,


DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. Katherine Polk Failla, U.S.D.J.

Mr. Felix Moret
#05A2930
Great Meadow Correctional Facility,
Box 51
Comstock, NY, 12821-0051

Respondent's counsel (via ECF)